United States District Court
Southern District of Texas
**ENTERED**
June 05, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **COURTNEY B. WARREN,** § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 4:23-cv-1397 |
| VS. § | |
| § | |
| **PNC BANK, NATIONAL** § | |
| **ASSOCIATION F/K/A BBVA USA,** *et al*, § | |
| § | |
| Defendants. | |

## **MEMORANDUM & ORDER**

Before the Court are two motions: (1) a Motion for Partial Summary Judgment filed by Defendant Hughes Watters & Akanase, LLP and Dominique Varner (collectively, the "HWA Defendants"), and (2) a Motion for Summary Judgment filed by Defendant PNC Bank, N.A., successor in interest to BBVA, USA ("PNC"). ECF Nos. 11, 12. For the reasons that follow, the Court **GRANTS** both Motions in their entirety.

**I.     BACKGROUND**[1]

This action arises out of Plaintiff Courtney Warren's default on the Note and Deed of Trust encumbering real property located at 402 Hunt Street, Houston, Texas, 77003. Warren purchased the property in question in November 2019. In order to purchase the property, on November 8, 2019, Warren financed $363,375.00 with PNC and executed a Note providing for repayment. *See* ECF No. 12-2. On that same day, she executed a Deed of Trust. ECF No. 12-3.

---

[1] Because Plaintiff failed to respond to Defendants' Motions for Summary Judgment, the Court accepts Defendants' allegations as undisputed. *Bernal v. The Bank of New York Mellon*, No. 4:14-CV-03436, 2015 WL 8207498, at *2 (S.D. Tex. Dec. 7, 2015) (Ellison, J.) (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988)).

In relevant part, the Deed provides that Warren will "promptly furnish to Lender [PNC] all notices of amounts to be paid," including tax bills. ECF No. 11-6 at 4, § 3. It further provides that, should Warren fail to honor the covenants in the Deed, PNC "may do and pay for whatever is reasonable or appropriate to protect [its] interest in the Property and rights under this Security Instrument" including "paying any sums secured by a lien which has priority over this Security Instrument [such as property taxes]." *Id.* at 6, § 9. Lastly, the Deed notes that if PNC disburses funds in accordance with those provisions, those amounts "shall become the additional debt of Borrower [Warren]." *Id.*

At the time of closing, based on PNC's estimates, Warren gave PNC $3,511.79 to pay her 2019 property taxes. ECF No. 11-13. PNC placed those funds into an escrow account. *Id.* Warren also made a $1,096.29 initial escrow deposit, which was to go towards four months of homeowner's insurance and two months of property tax payments. *Id.*

Though PNC had estimated a yearly property tax of $3,511.71, Warren's November 29, 2019 tax bill indicated that no taxes were due for the 2019 tax year. ECF No. 11-16. This created an apparent escrow surplus, and, accordingly, PNC mailed Warren a $7,124.32 refund check. ECF No. 12-9. Later, the taxing authority re-assessed the 2019 taxes at a base levy of $3,361.30.[2] ECF No. 11-17. The taxing authority sent the revised bill to Warren, not to PNC. *Id.* At the time that Warren received her "surplus" check from PNC, she was aware that she had not paid her 2019 or 2020 taxes, yet did not use the funds to pay these taxes. *See* HWA Def.'s Mot. ¶ 34, PNC Def.'s Mot, ¶ 7.

---

[2] Defendants explain that the property tax rose following a remodel that significantly increased the property's value. *See* HWA Def.'s Mot. at ¶¶ 17–19, ECF No. 11; PNC Def.'s Mot. ¶ 9 n.2. Defendants also note that the previous owner had a tax exemption. HWA Def.'s Mot. at ¶ 3; PNC Def.'s Mot. at 2.

In February 2021, the Harris County Appraisal District filed an action against Warren and PNC for delinquent taxes for the 2019 tax year. In accordance with the terms of the Deed, PNC paid the 2019 and 2020 taxes to protect its lien, recalculated the escrow, and sent Warren notice of a new mortgage payment, which she subsequently failed to pay. *See* ECF No. 11-8, 11-9. PNC later sent Warren a Notice of Default. ECF No. 11-10. After she failed to cure the default, PNC hired HWA to foreclose on the Deed of Trust lien on Warren's property. HWA Def.'s Mot. ¶ 38.

In an effort to stop the foreclosure, Warren filed suit against PNC, as well as HWA, its attorney, Ms. Varner, and every appointed substitute trustee. The HWA Defendants and PNC each filed a Motion for Summary Judgment.

## II.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; see also *Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v.*

*Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the "precise manner" in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).

Plaintiff has not filed a response to either Motion for Summary Judgment, despite being granted a fourteen-day extension to respond to PNC's Motion. *See* ECF No. 14. Per this District's Local Rules, "[f]ailure to respond to a motion will be taken as a representation of no opposition." S.D. Tex. L.R.7.4. However, [a] motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule." *Bernal*, 2015 WL 8207498, at *2 (Ellison, J.) (quoting *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995)). As such, Defendants retain the burden of establishing the absence of a genuine issue of material fact.

### III.   HWA DEFENDANTS' MOTION

**A. Fraud claims**

The HWA Defendants assert that attorney immunity bars Warren's fraud claims against them. Attorney immunity is an affirmative defense pursuant to which attorneys are immune from civil liability to non-clients for actions taken within the scope of their legal representation of a client. *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *2–*3 (Tex. App. Mar. 10, 2017) (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)). The Texas Supreme Court has stated that "[e]ven conduct that is 'wrongful in the context of the underlying suit' is not actionable if it is 'part of the discharge of the lawyer's duties in representing his or her client.'" *Cantey Hanger*, 467 S.W.3d at 481 (quoting *Toles v. Toles*, 113 S.W.3d 899, 910–11 (Tex. App. 2003); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App. 2005)). Attorney immunity is not absolute: attorneys may still be liable for conduct that falls outside of the typical duties owed to their client. *Id.* at 482. For example, attorney liability does not apply where an attorney participates in a fraudulent business scheme with her client, *id.* (citing *Poole v. Hous. & T.C. Ry. Co.*, 58 Tex. 134, 137 (1882)), or assists his client in evading judgment through a fraudulent transfer, *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 382 (Tex.App.–Houston [1st Dist.] 2012, pet. denied).

The Court agrees with the HWA Defendants the attorney immunity applies here. Texas courts have applied attorney immunity in cases like this one, where an attorney prosecuted a foreclosure on behalf of a mortgagee. *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *3–*4 (Tex. App. Mar. 10, 2017); *Campbell v. Mortgage Electronic Registration Systems, Inc.*, No. 03–11–00429–CV, 2012 WL 1839357, at *6 (Tex.App.–Austin May 18, 2012, pet. denied); *see also Cantey Hanger*, 467 S.W.3d at 482 n.6

"The majority of Texas cases addressing attorney immunity arise in the litigation context. But that is not universally the case."). An attorney-client relationship exists between HWA and Varner as the attorneys and PNC as the client. *See* ECF No. 11-2. Plaintiff's fraud claims against HWA and Varner involve conduct that was within the scope of HWA and Varner's representation of PNC: that is, moving forward with the foreclosure, as PNC hired them to do. *Id.* Therefore, attorney immunity applies to Plaintiff's fraud claims against the HWA Defendants.

### B. TDCA and FDCA claims

Plaintiff asserts TDCA and FDCA claims against the HWA Defendants, based on allegations that Defendants are "debt collectors" within the meaning of Tex. Fin. Code 392.001(6) and 15 U.S.C. § 1692a(6). These allegations are inaccurate. Section 392.001(6) does not apply to the HWA Defendants, as they do not seek to collect debts for themselves. *See Ruiz de Balderas v. ETX Successor Athens*, No. 6:19-CV-58-JDK-KNM, 2020 WL 1479583, at *8 (E.D. Tex. Mar. 4, 2020), *report and recommendation adopted*, No. 6:19-CV-58-JDK-KNM, 2020 WL 1478563 (E.D. Tex. Mar. 26, 2020). Likewise, § 1692a(6) does not apply to Defendants, as Warren was not in default when she first obtained the loan. *See Scarbrough v. JPMorgan Chase Bank, N.A.*, No. 4:21-CV-3760, 2022 U.S. Dist. LEXIS 115812, at *28 (S.D. Tex. 2022). Accordingly, Plaintiff's TDCA and FDCA claims against the HWA Defendants fail as a matter of law.

### IV. PNC'S MOTION

#### A. Breach of contract claim

Warren's breach of contract claim fails as a matter of law. The parties agree that Warren failed to make the payments required under the relevant contracts. Therefore, Warren cannot

sustain a breach of contract claim against PNC. *See Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016).

### B. Fraud claim

Plaintiff's fraud claim against PNC asserts that PNC misrepresented the amounts that Warren owed under her loan. *See* Original Pet. ¶¶ 131–37, ECF No. 1-3. PNC contests the accuracy of these allegations, but argues that, even if the underlying allegations were true, Plaintiff's fraud claim would be barred by the economic loss rule. The Court agrees with PNC. The allegations underlying Plaintiff's fraud claim allege a breach of duty created by the Deed of Trust, and Plaintiff's related injuries are purely economic in nature. *See Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998); *L. v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 795 (5th Cir. 2014). Thus, a straightforward application of the economic loss rule bars Plaintiff's fraud claim.

### C. DTPA claim

In order to pursue a claim under the DTPA, Warren must establish "consumer status." *Reule v. M & T Mortg.*, 483 S.W.3d 600, 614 (Tex. App. 2015) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)). "As a general rule, where the underlying transaction is a loan, consumer status is not conferred because money is neither a good or service." *Id.* (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173–74 (Tex. 1980)). Texas courts recognize one narrow exception to this general rule, in situations "where the objective of the transaction complained of was the purchase or lease of a good or service notwithstanding that the plaintiff borrowed money to complete the transaction." *Id.* That exception is inapplicable where a DTPA plaintiff solely seeks to borrow money from the defendant. *Flenniken v. Longview Bank & Tr. Co.*, 661 S.W.2d 705, 707–08 (Tex. 1983).

In this case, Warren has not established consumer status. The transaction complained of concerns only borrowed money from PNC; the remainder of PNC's complained-of actions were incidental to, not separate from, the loan transaction. *See id.* Money is not a good or service contemplated by the statute. *Riverside Nat'l Bank*, 603 S.W.2d at 173–74. Warren's DTPA claim fails as a matter of law.

### D.  TDCA claim

It is well-established that "foreclosure, or the threat of foreclosure, is not an action prohibited by law when a plaintiff has defaulted on their mortgage." *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 478 (5th Cir. 2015) (quoting *Wildy v. Wells Fargo Bank, NA*, No. 3:12–CV–01831–BF, 2012 WL 5987590, at *3 (N.D.Tex. Nov. 30, 2012)). Further, a TDPA claim must allege actual damages. *Adams v. U.S. Bank*, N.A., No. 3:17-CV-723-B-BN, 2018 WL 2164520, at *8 (N.D. Tex. Apr. 18, 2018) (dismissing TDCA claim, explaining that "no foreclosure has occurred, and neither [plaintiff's] lost income from time spent in prior litigation nor her court costs in bringing this action qualify as actual damages"), *report and recommendation adopted*, No. 3:17-CV-723-B-BN, 2018 WL 2150960 (N.D. Tex. May 10, 2018). Here, Warren has not alleged that PNC was prohibited from pursuing foreclosure under the Deed of Trust (nor can she), and she has not alleged actual damages, given that the foreclosure has not occurred. As a result, her TDCA claim against PNC fails as a matter of law.

### E.  Breach of fiduciary duty claim

Plaintiff's claim for breach of fiduciary duty likewise fails as a matter of law. There are no facts in the record that demonstrate that there is a fiduciary relationship between Plaintiff and PNC. *See Manufacturers' Hanover Tr. Co. v. Kingston Invs. Corp.*, 819 S.W.2d 607, 610 (Tex.

App. 1991 ("It is well settled that the relationship between a borrower and its lender is neither a fiduciary relationship, nor a special relationship.").

### F. Declaratory judgment claim

Lastly, Plaintiff's declaratory judgment claim cannot proceed. The Federal Declaratory Judgment Act does not create a substantive cause of action, rather, it "presupposes the existence of a judicially remediable right." *Reid v. Aransas Cnty.*, 805 F. Supp. 2d 322, 339 (S.D. Tex. 2011) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Thus, because all of Plaintiff's other claims fail as a matter of law, so too does her declaratory judgment claim.

## V. CONCLUSION

The Court extends its utmost sympathy towards Ms. Warren. The loss of one's home is a devastating event. Unfortunately, the applicable law offers little pliability in this case. The Court finds that, as to each of Plaintiff's claims, Defendants have established that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Defendants' Motions for Summary Judgment are **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 5th day of June, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE